(24 Misc. Rep. 119.)

BAKER v. RIEDEL.

(Supreme Court, Trial Term, Queens County. June, 1898.)

TRIAL—REMARKS OF JUDGE.

> Where the judge, in admonishing a witness for plaintiff not to testify to things he was not asked about, remarked that, unless a fair trial could be had, the court might as well adjourn, plaintiff was not prejudiced by the remark.

Action by John C. Baker against John Riedel for damages to a horse and wagon, and for personal injuries. On motion for new trial. Denied.

Clarence Edwards, for plaintiff.

Francis B. Taylor, for defendant.

GAYNOR, J. The plaintiff testified that as he was driving along the highway with a light road wagon the defendant who was driving his horse at a walk suddenly drove up very rapidly with his baker's wagon from a distance of one hundred feet or more in the rear and ran his left fore wheel into the plaintiff's hind axle. The defendant denied this and testified that as he was driving along the plaintiff passed him and cut in so close in front of him as to bring on a collision. There were no other witnesses of the occurrence and the case was therefore close. The plaintiff testified that he heard the sound of the defendant's whip as he came up in his rear. The defendant testified that he had no whip and that he never carried a whip. His wagon was the usual enclosed baker's wagon with a glass window in front through which the lines extended. In rebuttal the plaintiff called a witness to contradict the defendant's statement that he never carried a whip. To the question, "Did you ever see him use a whip," instead of answering yes he answered, while counsel for defendant was trying to stop him, "He used a whip on my horse some two years ago." The court directed the testimony to be struck out and said: "You were asked whether you ever saw him use a whip. Say yes or no. Do not volunteer like that." Being again asked if he ever saw defendant have a whip when driving his baker's wagon he answered yes. To the question, "When?" he answered in spite of the efforts of the defendant's counsel to stop him, "I cannot give the exact date. About two years ago he undertook to pass me on a run. He used his whip on my horse." The following next occurred:

"The Court: Strike that out. Do not be so willing to testify to something you are not asked. If we cannot have a fair trial here we might as well adjourn.

Plaintiff's Counsel: I except to that remark."

The learned counsel for the plaintiff in his brief says that the said remarks of the trial judge were "hostile" to the plaintiff and "not justified by what had occurred," and claims that they prevented a fair trial and that his exception thereto entitles the plaintiff to a new trial. As might be expected he cites Klinker v. Railroad Co., 26 App. Div. 322, 49 N. Y. Supp. 793, and also adopts as his own the language of the opinion in that case. A keen and critical resort

to that case has become the vogue of certain counsel. Their uppermost idea, derived from it, seems to be that the business of the trial judge is only to help the tip-staffs keep order while the jury tries the case, as Horne Tooke told Lord Mansfield (if my memory be not at fault) when he was being tried for libel. Their view, derived from the said case, is that the trial judge is placed in such a state of tutelage and subjection under our present judicial system that he may say nothing that is not colorless and apologetic. It does not seem to me that the learned appellate division intended to convey any such idea, though the words of the learned judge who wrote may convey a different impression. The facts in that case are as follows: The action was for damages caused by a street car running into a wagon. Being reached for trial (not at the opening of the day's session, but during the day), both sides answered "Ready" and the trial was begun. When the plaintiff rested counsel for the defendant opened and put in his evidence. No suggestion of any absent witnesses was made either orally or by affidavit; nor had any such affidavit been presented to the court at any time, or any postponement been asked for on that ground. Counsel for defendant having examined all his witnesses of the accident, called his last witness, who testified that he was a claim agent of the defendant company, and then said in answer to questions: "I have the original report of this case with me. I have a statement there of four witnesses of the accident. They are not in court because I have not had an opportunity to get them here. Q. Why not? A. Because I was ready and prepared four cases in New York county to-day." This is all of his testimony. Thereupon counsel for defendant said: "Now I make a motion to have this case adjourned until to-morrow." The response of the trial judge to the pretense thus presented was that its object was "to fool and hoodwink the jury." Of course if the trial of a cause discloses that there are absent witnesses who are under the influence of or allied with a party, such party may show their death or his inability to subpœna them in order to prevent any adverse inference from his failure to call them. But no such case was presented. What the report was which the witness mentioned, or whose it was, was not disclosed, nor was it even produced for inspection. Nor were the names or the residences of the four pretended witnesses of the accident given. Not even a clue to their identity was furnished. Nor was there any evidence anywhere in the case that there was any witness of the accident, whether subject to the defendant or a stranger, who had not testified. A pretense of four undisclosed witnesses of the accident and of their not having been subpœnaed because the claim agent had not the time to do it personally, when it could be done by any of the hundreds of employés of the company, was all that was presented. It is known to all judges, attorneys and counsel, and even to clerks who answer the call of calendars, that applications for postponements for absent witnesses must be made to the court before the trial is begun upon affidavits giving the names and residences of the witnesses and the reason why they have not been subpœnaed and showing that they are material and necessary. Questions of postponement are not for

52 N.Y.S.—53

the jury. I might add that a standing rule of court that all excuses for postponement "must be presented by affidavit in order to be considered" is published and also printed upon all the calendars of the supreme court in this county where the trial of the said action was had. Instead, counsel for defendant waited until all the evidence was in and the case was about to be given to the jury and another case taken up, and then adroitly brought the matter before the jury as has been described. It seems commonplace and trite to stop to say that such a proceeding could be no part of the trial, or of the record of the trial, and therefore could not be the subject of an exception upon the record of the trial. It was a smart intrusion. What was the object of it? Was it not to poison and warp the minds of the jury with a false suggestion that there were four witnesses of the accident whom the defendant was being deprived of opportunity to produce, and thereby fraudulently induce the jury to do injustice to the plaintiff? Was not the occurrence a gross wrong to the plaintiff? Was it the duty of the trial judge to let it pass, and, if so, to also allow the counsel for the defendant to continue to clamor about it to the jury a few minutes later in summing up? If the one, why not the other? If a part of the record might he not discuss it? Unfortunately juries are not infrequently influenced by such studied occurrences, to the grievous wrong of the opposite side and the mortification and chagrin of educated and honorable opposing counsel, incapable of stooping to such dishonorable methods. There are things which the trial judge perceives instantly from experience, but which the jury cannot be expected to see from their inexperience. Is the trial judge under our present judicial system without discretion and right to plainly speak of such practices, stop them and frustrate their object, and must he amiably allow them or pass them by? In England such conduct would be the subject of discipline, if we may imagine it could occur, and the counsel guilty of it would lose caste. The matter having been wrongfully introduced before the jury for the purpose of deceiving them and affecting their verdict the trial judge responded in a way to lay bare and defeat that object, as he felt it his bounden duty to do in the interest of truth and justice, and against trickery and sham. It seems to me that counsel who resort to such methods invite and must expect a plain response. The other side is entitled to be protected.

The judgment for the plaintiff was affirmed on appeal, but nevertheless the opinion there written goes aside to actually treat the said counsel as having performed his duty and characterize the response of the trial judge as "wholly without justification." How a trial judge should dispose of such an occurrence is of course not pointed out, as the conduct of counsel is treated as orderly and proper. But expressions in opinions are not law, but only what is actually decided by the court. Colonial City Traction Co. v. Kingston City R. Co., 154 N. Y. 493, 48 N. E. 900. I prefer to believe that the constitution and laws have not reduced trial judges to any such humiliating position in this state, and I perceive nothing to the contrary in the actual decision of the learned appellate division.

The learned judge writing also says that the trial judge afterwards realized his mistake and endeavored to correct it in his charge to the jury. Nevertheless as is sufficiently plain from the record the trial judge recurred to the subject in his charge to the jury because of reference to it by the respective counsel in summing up which he had interrupted and stopped. His instruction to the jury to disregard what both counsel had said concerning the pretended absent witnesses could not have referred to the principal occurrence, for then, and thence up to the charge, as the record shows, the counsel for the plaintiff had not said a word on the subject. The trial judge simply made the jury understand in the charge, as he conceived it his duty to do, that the matter had been wrongfully brought into the case, that it had nothing to do with it, that they could not consider it at all, or anything that either counsel or the court had said concerning it, or be influenced thereby. Is not this a reiteration of the so-called error in casting out of the case an attempt at fraud and deception? But if it were the case that the trial judge himself voluntarily recognized, acknowledged and corrected his mistake, so that no error was left, and the judgment had to be affirmed, all as the opinion says, what occasion was left for characterizing his action as the opinion does? Inasmuch as the learned judge writing held that no error existed, may I not with suitable respect and in good nature ask, using his own words, was it not his language concerning the trial judge which was "wholly without justification"?

I have been reluctantly constrained to make this reference to the opinion in the Klinker Case, because it has now so often been invoked before me, very much in the spirit which was to be expected. During the present term the counsel for the plaintiff in a negligence case insisted upon having his word taken that certain persons whose names he gave saw the accident, and his right to prove by a witness whom he called last that they could not be subpoenaed. There was no evidence of any witnesses who had not been examined and he offered none. He was only following the course of the counsel for the defendant in the Klinker Case as an approved precedent. If offered for an adjournment the evidence could not be made part of the trial record, but should have been presented to the court alone by affidavit. Being offered to fool the jury it would be reversible error to admit it. It may be doubted whether the learned judge who wrote in the Klinker Case would if a trial judge permit such an attempt to deceive a jury and wrong the other side, although his opinion treats counsel engaged in such a fraud as discharging his duty. An emphatic exception was taken in this last instance to the refusal of the court to allow counsel to go into the matter at all, or even discuss it. How far he succeeded in his purpose of getting an advantage by deceiving the jury into a belief that there were other witnesses favorable to his side is not easy to conjecture.

Just after the adoption of the present judicial system of withdrawing appeal judges from the experience of trying causes I heard a judge of large mentality and broad human nature, ever since and now sitting in an appellate division, say that it seemed to him calculated to exalt one branch of the judiciary while it degraded another, namely,

the branch which does the bulk of the work and bears the brunt in the administration of justice. However that may be of the system, it has grown apparent that it may easily be turned to that effect. It seems to me that it has always been recognized as wholesome in this state the same as in England that trial judges should feel free to exercise full control over the trial of causes and to speak plainly, especially in the presence of trickery or fraud. It is that which has kept the jury system so high in England. Honest litigants and honorable and learned counsel expect it and want it and are entitled to the protection of it. Our highest court has carefully guarded this function of the trial judge and refrained from infringing upon it though often invited to do so.

The motion is denied.